UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELA ALEJANDRA OLIVA FUNEZ,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>Respondents. | Case No. 1:26-cv-01845-KES-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS (A-Number 241 381 940)<br><br>(Docs. 1)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY RESPONDENTS' MOTION TO DISMISS<br><br>(Doc. 6)<br><br>**7-Day Objection Period** |

Petitioner Daniela Alejandra Oliva Funez, a federal immigration detainee, initiated this action on March 6, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). Petitioner is in the custody of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility. *Id.* ¶ 11. Respondents are: Christopher Chestnut, Warden of the California City Detention Facility; Moises Becerra, Field Office Director for ICE; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and Todd Blanche, Acting United States Attorney General.[1]  *See id.*

---

[1] Markwayne Mullin is automatically substituted for the former Secretary of DHS, Kristi Noem, and Todd Blanche for Pamela Bondi, former United States Attorney General; both were sued in their official capacity.  Fed. R. Civ. P. 25(d); *see* (Doc. 1).

On March 6, 2026, Petitioner filed a motion for temporary restraining order ("TRO"). (Doc. 2). On March 12, 2026, Respondents filed an answer to the petition, opposition to the motion for TRO, and motion to dismiss certain Respondents. (Docs. 6, 7). On March 16, 2026, Petitioner filed a traverse. (Doc. 8). On March 20, 2026, the assigned district judge denied the TRO motion, noting that Petitioner relied on inapposite authorities without addressing the applicable statutory scheme (8 U.S.C. § 1231). The district judge granted Petitioner leave to file an amended petition and referred the action to the undersigned for further proceedings. (Doc. 9). On April 2, 2026, Petitioner filed her amended petition (Doc. 10) and a motion for preliminary injunction (Doc. 11).

For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted and Respondent's motion to dismiss be denied.

**I.      Relevant Background**

The background that follows is drawn from Petitioner's allegations and filings (Docs. 1, 2, 8, 10) and Respondents' response to the petition (Doc. 7).

Petitioner is a native and citizen of Honduras. (Doc. 7, Ex. 1; Doc. 2, Ex. D ¶ 1). She entered the United States on August 26, 2023, was apprehended by Customs and Border Protection, placed in expedited removal proceedings and ordered removed pursuant to the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I). (Doc. 10 ¶ 19; Doc. 2, Exs. A, B; Doc. 7, Ex. 2). She was removed on September 8, 2023 (Doc. 7 at 2; *id.*, Ex. 1) but, on or about November 15 or 18, 2023, attempted to enter the United States and was detained. Her prior final order of removal was reinstated and she was given a reasonable fear interview, after which the asylum officer determined her fear was reasonable. Petitioner was allowed to enter the United States to pursue withholding of removal proceedings. On January 24, 2024, she was released into the United States under an order of supervision and required to wear an ankle monitor for approximately one month. The monitor thereafter was removed and she was supervised by immigration authorities through the Intensive Supervision Appearance Program ("ISAP") application. (Doc. 10 ¶ 20; Doc. 2, Ex. C; Doc. 7 at 2; *id.*, Exs. 1, 3).

On January 14, 2026, Petitioner attended a routine appointment at the ISAP office in Baltimore, Maryland, where she was informed by an ICE officer that she had alleged violations

2

related to her application and her prior deportation order from 2023. She was not shown an arrest warrant and her rights were not clearly or formally explained to her, neither verbally nor in writing. (Doc. 10 ¶ 21; Doc. 2, Ex. D ¶ 2; Doc. 7, Ex. 5). She was placed in cuffs on her hands and feet and transferred to the California City Detention Center in ICE custody. (Doc. 10 ¶ 22; Doc. 2, Ex. D ¶ 3). Petitioner alleges that the conditions of confinement are poor and cause her health problems. (Doc. 10 ¶¶ 24-26, 28-29; Doc. 2, Ex. D ¶¶ 5-7, 9-10).

Petitioner represents that her husband attempted to request bail but was informed that a response was needed from the immigration judge before a bond hearing could be requested; no response was provided. Petitioner also represents that she has complied with all reporting requirements and has not committed any crimes. (Doc. 10 ¶¶ 30-31; Doc. 2, Ex. D. ¶¶ 11-12).

In opposing grant of the writ, Respondents assert that Petitioner has "many Alternatives to Detention ('ADT') violations." (Doc. 7 at 2; *id.*, Ex. 1). A review of the cited exhibit in support evidences a "missed biometric check-in" on December 12, 2024, and another on January 10, 2025, as well as a failed home visit on March 21, 2025. *Id.*, Ex. 1. In her traverse, Petitioner addresses Respondents' allegations of ADT violations by asserting that the government "provided neither notice nor an opportunity to be heard at an interview, nor did it conduct any determination under the multiple factors required by the governing regulations." (Doc. 8 at 5).

The Court takes judicial notice that Petitioner has a hearing on April 14, 2026, with a docket date of January 19, 2024.[2]

**II.     Governing Authority**

    **A.     The Writ of Habeas Corpus**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should

---

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 9, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.

####    B.    Due Process

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'"  *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V).  "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process."  *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'"  *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746).  "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'"  *Mathews*, 424 U.S. at 902 (citation omitted).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that

4

the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

**C.    Relevant Statutory Framework (8 C.F.R. §§ 241.13(i) and 241.4(l))**

Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(*l*), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  Section 241.13(i) also provides for revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision[.]"  8 C.F.R. § 241.13(i)(1).

Where a petitioner is detained, becomes the subject of a final order of removal, and subsequently is released on an order of supervision upon the expiration of the 90-day removal period, the regulations at 8 C.F.R. §§ 241.13(i) and 241.4(*l*) govern.  *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025); *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).  As noted by the court in *Escalante*, "[a]fter *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for … those who are re-detained upon revocation of their supervised release."  *Escalante*, 2025 WL 2206113 at *3.  The *Escalante* court further observed:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4)[,] which is entitled "*Service determination under 8 C.F.R. 241.13*[,]" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third county, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

*Id.*

These regulations establish that, when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." *Id.*; *see id.* ("Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications."); *e.g.*, *Nguyen*, 788 F. Supp. 3d at 150 ("ICE's decision to re-detain a noncitizen like [Mr. Nguyen] who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.") (citing *Kong v. United States*, 62 F. 4th 608, 619-20 (1st Cir. 2023)); *Roble v. Bondi*, No. 25-cv-3196-LMP-LIB, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-cv-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) (same).

Detention is permissible only if ICE can show that there is a significant likelihood of removal in the reasonably foreseeable future or if there was a violation of the order of supervision. *See* 8 C.F.R. § 241.13(i).

**III.    Exhaustion**

    **A.    Governing Authority**

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."

*Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered.… Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

## B. Analysis

Neither Petitioner nor Respondents address exhaustion in their filings. *See* (Docs. 1, 2, 6, 7, 8, 10). The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner, with a final order of removal, is subject to detention under 28 U.S.C. § 1231 pending the effectuation of her removal. *See* (Doc. 7 at 1); *El Rescate Legal Servs*., 959 F.2d at 747-48 ("where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.") (internal quotations and citation omitted). For these reasons, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioner's claim for habeas corpus relief.

## IV. Discussion

Petitioner asserts two causes of action in her petition: (1) violation of Fifth Amendment right to due process and (2) violation of 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.4. (Doc. 10 at 23-25).

The Court addresses whether ICE followed its own regulations applicable to the procedure that governs Petitioner's re-detention. "Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

The applicable regulations provide that "[u]pon revocation, the alien will be notified of the

7

reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1). The procedure is elaborated upon in 8 C.F.R. § 241.4(i)(3):

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

The same section also sets forth additional factors for consideration relating to a significant likelihood of removal, including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." 8 C.F.R. § 241.13(f).

Petitioner asserts that she was informed by an ICE officer upon the revocation of her release that she "had committed some violations with the application and that I had a previous deportation order from 2023," that she was not shown an arrest warrant, and that her rights were not clearly or formally explained to her, neither verbally nor in writing. (Doc. 10 ¶ 21; Doc. 2, Ex. D ¶ 2; Doc. 7, Ex. 5). In her traverse, Petitioner alleges that the government "provided neither notice nor an opportunity to be heard at an interview, nor did it conduct any determination under the multiple factors required by the governing regulations." (Doc. 8 at 5). Respondents do not assert that they provided Petitioner with a Notice of Revocation of Release form nor otherwise sufficiently

8

explained to her the grounds for her re-detainment – to wit, alleged violations of her conditions of supervision – nor otherwise promptly provided her an informal interview at which she could challenge the reasons for revocation. The exhibits attached by Respondents to their answer to the petition provide no details beyond identifying the dates of two missed biometric check-ins (one on December 12, 2024, and the other on January 10, 2025) and a failed home visit (on March 31, 2025). Aside from being told by immigration authorities that her release was being revoked due to violations of her terms of supervision, there is no evidence that Petitioner was informed of the nature of these alleged violations. The Court notes that the latest of these three violations was on March 21, 2025, which is almost ten months prior to Petitioner's re-detainment by ICE. Respondents do not address this delay. *See* (Doc. 7 at 13).

Aside from Petitioner's alleged violations of supervised release, Respondents do not argue and the record does not reflect the existence of "changed circumstances" that would provide a separate basis for revocation of Petitioner's release, nor that removal was significantly likely in the then-reasonably foreseeable future. *Cf. Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) ("Respondents assert that they have determined that there are changed circumstances and that Tran will be removed to Vietnam in the reasonably foreseeable future. While that may certainly be the case now, § 241.13(i)(2) requires that this determination is made before the removable alien has had his release revoked.").

The undersigned finds that Respondents fail to establish that they provided sufficient notice of the grounds for revocation of Petitioner's release based on violations of conditions of supervision. Petitioner was not provided by immigration authorities a "Notice of Revocation of Release" form identifying the reasons for her re-detention and there is no record evidence Petitioner was informed of the nature of the alleged violations (aside from the arresting officer telling her generally that she had violated unspecified terms of supervision). *See, e.g.*, *Saengphet v. Noem*, -- F. Supp. 3d --, 2025 WL 3240808, at *4-7 (S.D. Cal. Nov. 20, 2025) (finding two Notice of Revocation of Release forms were vague and did not provide adequate notice to the petitioner under § 241.13); *Truong*, 2025 WL 2988357, at *4 (finding notice vague where the notice "advises Petitioner of ICE's determination that, pursuant to 8 C.F.R. § 241.4, he will be kept in its custody"

but "any allegations that Petitioner engaged in conduct that violate conditions of his release are conspicuously absent from the [n]otice," which "also does not indicate which criteria under 8 C.F.R. § 241.4 is implicated and supports that the Government was justified in re-detaining Petitioner.").

Separately, Respondents do not assert and there is no record evidence to find that Respondents complied with their regulatory obligation under 8 C.F.R. § 241.4 to provide Petitioner an informal interview promptly upon her re-detention to permit her to challenge the bases for the revocation of her release. *See Truong*, 2025 WL 2988357, at \*5 ("Respondents fail to address whether Truong's informal interview—which provides noncitizens with an opportunity to contest their detention—was conducted.  In light of this omission, the Court finds that Respondents failed to comply with its duties under 8 C.F.R. § 241.4(*l*)(1) because Truong was not provided with an informal interview.").  Even if any such informal interview was conducted, a lack of notice of the bases for revoking her release deprived Petitioner of the opportunity to respond to the grounds for revocation of release.  *See id.* at \*4 ("It would be impossible for a noncitizen to challenge and successfully overcome ICE's reasons for detaining them, if they are never informed of those reasons.  The Court finds that the Notice's contents fail to provide any, let alone sufficient, notice of the Government's basis for revoking Truong's release.").  As such, the lack of notice renders any subsequent interview deficient as, without proper notice of the grounds supporting re-detainment, Petitioner had no meaningful way to respond to them, as required by 8 C.F.R. § 241.4(*l*)(1).

In sum, Respondents failed to follow their own regulations in re-detaining the Petitioner. *See, e.g.*, *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099-1100 (S.D. Cal. 2025) (ordering petitioner's release where ICE failed to follow § 241.13).  Thus, the undersigned will recommend that Petitioner's petition be granted as to her request for release.  Because the undersigned finds that Respondents failed to follow their own regulations in revoking release, and as Petitioner's other arguments seek the same or similar relief (*i.e.*, for immediate release), the undersigned elects to forgo addressing Petitioner's other grounds for relief.

///

10

## V.   Respondents' Motion to Dismiss

Petitioner names as Respondents Christopher Chestnut, Warden of California City Detention Facility; Moises Becerra, Field Office Director for ICE; Markwayne Mullin, Secretary of Homeland Security; and Todd Blanche, Acting United States Attorney General.  (Docs. 1, 10).

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees."  *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024).

The Ninth Circuit in *Doe* held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition."  *Doe*, 109 F.4th at 1197.  The Ninth Circuit also held that, when a "habeas petitioner challenges a form of 'custody' other than present physical confinement, the respondent can be the entity or person who exercises legal control with respect to the challenged 'custody.'"  *Id.* at 1192 n.2 (quotation marks omitted; citing *Padilla*, 542 U.S. at 438).

Because Petitioner has named her immediate custodian as a Respondent and the undersigned recommends the petition be granted and an injunction be entered regarding future re-detainment of Petitioner by Respondents, the undersigned will recommend that the Court deny Respondents' motion to dismiss (Doc. 6).

## VI.   Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's petition for writ of habeas corpus (Docs. 1, 10) be GRANTED;

2.  Respondents' motion to dismiss (Doc. 6) be DENIED;

3.  Respondents be ORDERED to release Petitioner immediately, subject to preexisting conditions of supervision;

11

4. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner absent compliance with applicable due process including 8 C.F.R. §§ 241.4 and 241.13, and any other applicable statutory and regulatory procedures; and

5. The Clerk of the Court be directed to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 10, 2026**   _____

UNITED STATES MAGISTRATE JUDGE

12